COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

08-4388

PHONE.COM, LLC; ESCOM, LLC;
CONSULTANTS.COM, LLC; LOVE TACTICS,
LLC; RELATIONSHIP.COM, LLC; and
INTERNET REAL ESTATE GROUP, LLC,

    Plaintiffs,

   v.

SOVEREIGN BANK,

    Defendant.

NO.

RECEIVED

OCT 02 2008

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT AND JURY DEMAND

### Introduction

1. This action is brought by the plaintiffs Phone.com,
LLC ("Phone"), Escom, LLC ("Escom"), Consultants.com, LLC
("Consultants"), Love Tactics, LLC ("Love Tactics"),
Relationship.com, LLC ("Relationship") and the Internet Real
Estate Group, LLC ("IREG") which lost in 2007 and 2008 very
substantial sums of money due to the improper and wrongful
actions of their bank - the defendant Sovereign Bank
("Sovereign"). As detailed below, Sovereign allowed an
unauthorized individual, namely Mr. Christopher Britt ("Britt"),
to withdraw or otherwise take control over money - altogether
totaling over $515,000 - that belonged to the plaintiffs, even

though Britt had no signing authority on the plaintiffs'
Sovereign accounts or any other legal authorization to take such
actions.

2.      After the plaintiffs Phone, Escom and Consultants
discovered that money was missing from their accounts and that
Sovereign's own improper and wrongful actions facilitated and
allowed the unauthorized withdrawals, these plaintiffs alerted
Sovereign of the facts and demanded reimbursement.  As Sovereign
refused to accept liability to these plaintiffs for this missing
money, these plaintiffs sent a Chapter 93A demand letter
(requesting that Sovereign reimburse plaintiffs) to Sovereign's
president and in-house legal counsel.  Less than 48 hours after
the receipt of this Chapter 93A demand letter by Sovereign's in-
house legal counsel, and without any notice or just cause,
Sovereign (through this same in-house legal counsel) maliciously
and unlawfully froze the Sovereign bank accounts of Phone,
Consultants, and seventeen other LLC entities (including Love
Tactics, Relationship, and IREG) with which some of the
principals of the plaintiffs Phone, Escom and Consultants are
affiliated (Sovereign could not freeze any Escom accounts as
Sovereign already wrongfully had allowed Britt in March 2008 to
close these accounts and take all the money held in such
accounts).

3.    In addition and soon thereafter, on August 21, 2008, Sovereign suddenly, and without any prior (or even contemporaneous) notice, closed in bad faith the plaintiff IREG's $50,000 business Line of Credit with Sovereign.  This retaliatory and bad faith action was taken by Sovereign at the same time plaintiffs Phone, Escom and Consultants had been pressing Sovereign for a response to their Chapter 93A demand letter (for which Sovereign asked for and was given multiple extensions of time).

4.    The plaintiffs Love Tactics, Relationship and IREG learned in mid-September 2008 that Sovereign wrongfully allowed Britt in 2007 and 2008 to deposit many third party checks made out to these three plaintiffs into Sovereign accounts belonging to Britt or his corporate entity Priviley LLC.

5.    Sovereign's bad faith and culpability in this matter is further exemplified by its past and current reliance (with respect to the missing Escom funds totaling $304,849.62) on a March 6, 2008 Sovereign Confirmation Of Endorsement Form document which was falsely witnessed and falsely notarized by a then Sovereign employee and/or bank branch manager.

6.    The plaintiffs' losses in this matter due to Sovereign's wrongful actions and inactions far exceed the total of $515,538.13 in funds that Sovereign allowed Britt to steal from the plaintiffs.  For example, the plaintiffs, which are

- 3 -

growing internet businesses, have lost the profits that they would have earned had they been able to use the working capital Sovereign permitted Britt to steal. This loss has been made worse by Sovereign's continued refusal to own up to its wrongful conduct and reimburse the plaintiffs. The plaintiffs also seek from Sovereign multiple damages and attorneys fees pursuant to Mass. Gen. L. c. 93A.

### Parties, Venue and Jurisdiction

7.     The plaintiff Phone.com, LLC ("Phone"), is a Delaware limited liability company with a place of business at 123 Newbury Street, Boston, Suffolk County, Massachusetts.

8.     The plaintiff Escom, LLC ("Escom"), is a Delaware limited liability company with a place of business in the State of California.

9.     The plaintiff Consultants.com, LLC ("Consultants"), is a Delaware limited liability company with a place of business at 123 Newbury Street, Boston, Suffolk County, Massachusetts.

10.     The plaintiff Love Tactics, LLC ("Love Tactics"), is a Delaware limited liability company with a place of business at 123 Newbury Street, Boston, Suffolk County, Massachusetts.

11.     The plaintiff Relationship.com, LLC ("Relationship"), is a Delaware limited liability company with a place of business at 123 Newbury Street, Boston, Suffolk County, Massachusetts.

12.    The plaintiff Internet Real Estate Group, LLC
("IREG"), is a Delaware limited liability company with a place
of business at 123 Newbury Street, Boston, Suffolk County,
Massachusetts.  IREG was formally named Deal Jam, LLC.

13.    The defendant Sovereign Bank ("Sovereign") is a
corporation that operates bank branches and/or administrative
offices in Massachusetts, including one at 75 State Street,
Boston, Suffolk County, Massachusetts and one at 575 Boylston
Street, Boston, Suffolk County, Massachusetts.

14.    Venue is proper in this Court (i) since Suffolk County
is the location of the usual place of business of one or more of
the parties, and also (ii) since this matter involves forged
checks and/or instruments that were presented for payment in
Suffolk County.  See Mass. Gen. L. c. 223, § 1.

15.    Jurisdiction is proper in this Court as the damages
are in excess of $25,000.

Facts

16.    From February 2007 through November 2007, Britt was a
bookkeeping and finance employee of IREG – which is located in
Boston and is one of the managers of Phone, Consultants, Love
Tactics and Relationship.  In early December, 2007, Britt left
the employ of IREG and began providing similar bookkeeping and
finance services to IREG as an independent contractor through a
company named Priviley, LLC ("Priviley") – which was and is

- 5 -

owned (upon information and belief) entirely or primarily by Britt. IREG ended its business relationship with Priviley (and thus with Britt) on or about May 23, 2008 when IREG learned that Britt (and other Priviley staff) had stolen money from and/or otherwise defrauded the plaintiffs Phone, Escom, Consultants and IREG.

I.   Escom, LLC

17.   As of the close of business on March 3, 2008, Escom, LLC had two bank accounts at Sovereign - a money market account with a balance of $301,446.27 and a checking account with a balance of $3,403.35. These funds were for investment and use in Escom's internet-based business activities. The only two approved signatories on these two Escom accounts at this time, according to the books and records of Sovereign, were Mr. Andrew Miller ("Miller") and Mr. Peter Hubshman ("Hubshman"). Britt was never an approved signatory on any of Escom's accounts at Sovereign. A true and accurate copy of the Sovereign documents showing who had signing authority for Escom's Sovereign accounts in March 2008 is attached hereto as Exhibit A.

18.   On March 4, 2008, Britt went to a Sovereign branch in Boston, and Sovereign (through Sovereign Vice President Donna Wolfe - "Wolfe") allowed Britt to close the Escom checking account and to transfer the entire balance of the Escom checking account to the Escom money market account. A true and accurate

copy of the Sovereign document, signed by Britt, closing the Escom Sovereign checking account is attached hereto as Exhibit B.

19.    Soon thereafter, and also on March 4, 2008, Sovereign allowed Britt to close the Escom money market account and place the entire balance ($304,849.62) of the Escom money market account into a Sovereign "OFFICAL CHECK" made out to Escom, LLC. Wolfe approved these transactions and signed this $304,849.62 OFFICIAL CHECK.  A true and accurate copy of the Sovereign document, signed by Britt, closing of the Escom Sovereign money market account is attached hereto as Exhibit C.

20.    On or about March 5, 2008, Sovereign accepted this $304,849.62 OFFICAL CHECK made out to Escom, LLC for deposit into a Priviley bank account at Sovereign even though no one endorsed the back of this OFFICAL CHECK and even though Priviley was not the payee on the check.  A true and accurate copy of this $304,849.62 OFFICAL CHECK is attached hereto as Exhibit D.

21.    Upon information and belief, on March 5 or 6, 2008, Britt was informed by a Sovereign official that Sovereign would not deposit the funds from the $304,849.62 OFFICAL CHECK made out to Escom, LLC into a Priviley bank account at Sovereign unless and until Britt and an authorized signatory on the Escom accounts (i.e., Miller or Hubshman) each completed Sovereign's "Confirmation of Endorsement Form".

22.   On March 6, 2008, Mr. Robby A. Thomas ("Thomas"), who was then a manager at Sovereign's 575 Boylston Street branch in Boston, signed as both a Sovereign CBO Team Member witness and a notary public on the two Confirmation of Endorsement Forms that allowed the $304,849.62 OFFICAL CHECK made out to Escom LLC to be deposited without endorsement into a Priviley bank account at Sovereign.  A true and accurate copy of these two Confirmation of Endorsement Forms is attached hereto as Exhibit E.

23.   Sovereign's Confirmation of Endorsement Form specifically provides that the payee signatory (i.e., Miller or Hubshman) "personally appeared" before the notary.  In fact, this did not happen in this case.  Instead, on March 6, 2008, Thomas improperly and illegally notarized and witnessed the Confirmation of Endorsement Form allegedly signed by Hubshman even though Hubshman never signed this Confirmation of Endorsement Form nor appeared before Thomas on that day.  Upon information and belief, Hubshman's signature on this form was forged by Britt or by someone working with Britt.

24.   The fact that Britt did appear before Thomas on March 6, 2008, but Hubshman did not, is further evidenced by the fact that Britt's date of birth and drivers license expiration date are recorded on the Britt Confirmation of Endorsement Form, but not on the Hubshman Confirmation of Endorsement Form.

25.   Britt's Confirmation of Endorsement Form also incorrectly refers to Escom as "a subsidiary of Priviley LLC". As of March 6, 2008, Sovereign knew or reasonably should have known that that this was not true.

26.   The wrongful actions of Sovereign towards Escom in early March 2008 thus include, but are not limited to: (i) allowing Britt to close Escom's checking account, (ii) allowing Britt to close Escom's money market account, (iii) allowing Britt to withdraw the combined balances of Escom's checking and money market accounts ($304,849.62) in the form of a Sovereign bank check, (iv) allowing Britt to deposit this bank check made out to Escom into a Priviley account, (v) falsely witnessing and notarizing the Hubshman Confirmation of Endorsement Form, (vi) relying on the Hubshman Confirmation of Endorsement Form even though it was clearly false, or at least suspect, on its face, and (vii) refusing to reimburse Escom for the $304,849.62 withdrawn improperly from the Escom accounts.

27.   As a result of Sovereign's wrongful actions and/or inactions, Escom lost $304,849.62 from its Sovereign accounts as well as the profits that Escom would have earned on this money and other damages and costs for which Sovereign is liable to Escom.

## II.  Phone.com LLC

28.   In late August 2007, an investor sent Phone a $150,000 check made out to "Phone.com LLC".  When this check was presented to Sovereign by Britt (or by someone working with him or Priviley) on or about September 24, 2007, Sovereign allowed it to be deposited in full into a Sovereign bank account for Priviley, rather than into Phone's account at Sovereign.  The deposit of this $150,000 into Priviley's account was made without the approval of Phone.  A true and accurate copy of this $150,000 check is attached hereto as Exhibit F.

29.   On or about March 3, 2008, a $5,612.00 check from Phone's Sovereign checking account made out to "American Express" (and listing an American Express account number) was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for American Express or Phone.  The deposit of this $5,612.00 into Priviley's account was made without the approval of American Express or Phone.  A true and accurate copy of this $5,612.00 check is attached hereto as Exhibit G.

30.   Sovereign has refused to reimburse Phone for any or all of the $155,612 that Sovereign allowed to be taken from Phone by Britt and/or Priviley.

31.   As a result of Sovereign's wrongful actions and/or inactions, Phone lost $155,612 from its Sovereign account as well as the profits that Phone would have earned on this money and other damages and costs for which Sovereign is liable to Phone.

III. Consultants.com, LLC

32.   Between April 2007 and August 2007, Sovereign withdrew a total of $40,500 from the Sovereign account of Consultants through Consultants account check numbers 1001, 1002, 1004, 1005 and 1006 – all of which had the forged signatures of Hubshman or Miller and all of which were made out to Priviley.  Consultants did not approve any of these checks that were deposited into Priviley's account.  A true and accurate copy of these forged checks is attached hereto as Exhibit H.

33.   Sovereign has refused to reimburse Consultants for the $40,500 that Sovereign wrongfully allowed to be taken from Consultants by Britt and/or Priviley.

34.   As a result of Sovereign's wrongful actions and/or inactions, Consultants lost $40,500 from its Sovereign account as well as the profits that Consultants would have earned on this money and other damages and costs for which Sovereign is liable to Consultants.

IV.  Love Tactics, LLC

35.  On or about August 24, 2007, a $1,198.27 check from Blue Cross/Blue Shield of Massachusetts made out to "Love Tactics, LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for Love Tactics.  The deposit of this $1,198.27 into Priviley's account was made without the approval of Blue Cross/Blue Shield of Massachusetts or Love Tactics.

36.  On or about November 23, 2007, three checks (for $140.66, $254.89, and $162.10) from Google, Inc. made out to "Love Tactics, LLC" were presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for Love Tactics.  The deposit of these checks for $140.66, $254.89, and $162.10 into Priviley's account was made without the approval of Google Inc. or Love Tactics.

37.  On or about February 25, 2008, a $2,396.54 check from Blue Cross/Blue Shield of Massachusetts made out to "Love Tactics, LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for Love Tactics.  The deposit of this $2,396.54 into Priviley's account

was made without the approval of Blue Cross/Blue Shield of Massachusetts or Love Tactics.

38.    Sovereign has not reimbursed Love Tactics for any or all of the $4,152.46 that Sovereign allowed to be taken from Love Tactics by Britt and/or Priviley.

39.    As a result of Sovereign's wrongful actions and/or inactions, Love Tactics lost $4,152.46 from its Sovereign account as well as the profits that Love Tactics would have earned on this money and other damages and costs for which Sovereign is liable to Love Tactics.

V.    Relationship, LLC

40.    On or about November 23, 2007, two checks (for $629.93 and $539.12) from Vintacom Media Group Inc. made out to "Relationship.com" were presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for Relationship.  The deposit of these checks for $629.93 and $539.12 into Priviley's account was made without the approval of Vintacom Media Group Inc. or Relationship.

41.    Sovereign has not reimbursed Relationship for any or all of the $1,169.05 that Sovereign allowed to be taken from Relationship by Britt and/or Priviley.

42.    As a result of Sovereign's wrongful actions and/or inactions, Relationship lost $1,169.05 from its Sovereign

account as well as the profits that Relationship would have
earned on this money and other damages and costs for which
Sovereign is liable to Relationship.

VI.   Internet Real Estate Group, LLC

43.   On or about August 24, 2007, a $2,396.54 check from
Blue Cross/Blue Shield of Massachusetts made out to "Internet
Real Estate Group LLC" was presented by Britt (or by someone
working with him or Priviley) to Sovereign for deposit into a
Sovereign bank account for Priviley, rather than into an account
for IREG.  The deposit of this $2,396.54 into Priviley's account
was made without the approval of Blue Cross/Blue Shield of
Massachusetts or IREG.

44.   On or about November 23, 2007, a $461.69 check from
Commerce Insurance made out to "Internet Real Estate Group LLC"
was presented by Britt (or by someone working with him or
Priviley) to Sovereign for deposit into a Sovereign bank account
for Priviley, rather than into an account for IREG.  The deposit
of this $461.69 into Priviley's account was made without the
approval of Commerce Insurance or IREG.

45.   On or about November 23, 2007, a $152.00 check from
Travelers Property Casualty made out to "Deal Jam LLC" (which is
IREG's previous corporate name) was presented by Britt (or by
someone working with him or Priviley) to Sovereign for deposit
into a Sovereign bank account for Priviley, rather than into an

account for IREG.  The deposit of this $152.00 into Priviley's account was made without the approval of IREG.

46.   On or about November 23, 2007, a $28.00 check from Federal Express made out to "Internet Real Estate Group" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for IREG.  The deposit of this $28.00 into Priviley's account was made without the approval of Federal Express or IREG.

47.   On or about November 23, 2007, a $20.00 check from Fox, Hefter, Swibel, Levin, and Carroll, LLP made out to "Internet Real Estate Group LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for IREG.  The deposit of this $20.00 into Priviley's account was made without the approval of Fox, Hefter, Swibel, Levin, and Carroll, LLP or IREG.

48.   On or about November 23, 2007, a $146.72 check from Holyoke Mutual Insurance Company made out to "Internet Real Estate Group LLC/Deal Jam LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for IREG.  The deposit of this $146.72 into Priviley's account was made without the approval of IREG.

49.    On or about November 23, 2007, a $611.07 check from Hot Media, Inc. made out to IREG care of Andrew Miller was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for IREG.  The deposit of this $611.07 into Priviley's account was made without the approval of Mr. Miller or IREG.

50.    On or about November 2, 2007, a $3,364.96 check from IREG made out to "Love Tactics, LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Britt, rather than into an account for Love Tactics or IREG.  The deposit of this $3,364.96 into Britt's account was made without the approval of Love Tactics or IREG.

51.    On or about November 2, 2007, a $2,073.52 check from IREG made out to "Safety Acquisition Group, LLC" was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for Safety Acquisition Group, LLC or IREG.  The deposit of this $2,073.52 into Britt's account was made without the approval of Safety Acquisition Group, LLC or IREG.

52. Sovereign has not reimbursed IREG for any or all of the $9,255.00 that Sovereign allowed to be taken from IREG by Britt and/or Priviley.

53. As a result of Sovereign's wrongful actions and/or inactions, IREG lost $9,255.00 from its Sovereign account as well as the profits that IREG would have earned on this money and other damages and costs for which Sovereign is liable to IREG.

VII. All Plaintiffs

54. In late May 2008 and early June 2008, the plaintiffs Phone, Escom and Consultants reported to Sovereign (through Wolfe and others) their $500,961.62 in direct losses described above.

55. On or about Friday June 13, 2008, Sovereign's New England External Investigations Manager, Ms. Laura Boulay ("Boulay"), informed plaintiffs' counsel that her investigative report in this matter should be completed by late June 2008 or very early July 2008.

56. On June 18, 2008, in response to Sovereign's request through Boulay for a statement of all losses by the plaintiffs Phone, Escom and Consultants due to the actions of Britt and/or Priviley, these plaintiffs in good faith sent a detailed document, with numerous attachments, to Boulay, entitled "CLAIMS

BY ESCOM LLC, PHONE.COM LLC & CONSULTANTS.COM LLC" - a true and accurate copy of which is attached hereto as Exhibit I.

57.   Sovereign subsequently failed to reimburse these plaintiffs for any of their losses or even to share a copy of the report of their investigator Boulay.

58.   On Wednesday July 9, 2008, the plaintiffs Phone, Escom and Consultants sent a demand letter to Sovereign asserting claims under Mass. Gen. L. c. 93A and demanding payment of a total of $500,961.62.  A true and accurate PDF copy of this Chapter 93A demand letter was sent by email (at approximately 5:12 pm on July 9, 2008) to Sovereign's in-house attorney Denise A. Gaudet, Esq. ("Gaudet").  Gaudet received and reviewed this email no later than 5:36 pm of that same day.  A true and accurate copy of these plaintiffs' Chapter 93 demand letter (with attachments) to Sovereign is attached hereto as Exhibit J.

59.   The morning of Friday July 11, 2008, less than forty-eight (48) hours after Gaudet's receipt and review of the plaintiffs' Chapter 93A demand letter, Gaudet without any notice or warning sent a letter to the plaintiffs' counsel telling him that Sovereign had frozen the bank accounts of Phone, Consultant, and seventeen other LLC entities with which some of the principals of these plaintiffs are affiliated.  Sovereign could not freeze any ESCOM accounts as Sovereign already wrongfully had allowed Britt to close these accounts and take

all the money in them.  The July 11, 2008 letter was sent

without any good cause and in bad faith, apparently to retaliate

against these plaintiffs for asserting their legal rights under

Chapter 93A against Sovereign less than two days earlier.  This

July 11, 2008 letter also stated that these entities must send

Sovereign detailed confidential corporate information and

documents in order to get their Sovereign accounts unfrozen,

even though this type of documents and information is not

requested of other account holders.  A true and accurate copy of

Sovereign's July 11, 2008 letter is attached hereto as Exhibit

K.

    60.   During the afternoon of July 11, 2008, plaintiffs'

counsel repeatedly requested of Gaudet by phone that Sovereign

unfreeze these accounts immediately.  Gaudet and Sovereign

refused these requests.

    61.   The managers of the entities that had their Sovereign

accounts frozen under the terms of the July 11, 2008 letter were

forced to spend many hours of time in the weeks after that date

collecting the documents and information demanded.  This was

highly harmful to their ability to conduct business as normal.

In addition, Sovereign's freezing of these accounts sent the

affected companies' investors and business partners the

inaccurate and highly defamatory signal that these companies had

financial problems or improprieties.

62.    There was no valid reason for Sovereign's freezing of accounts on July 11, 2008.  The primary reason cited by Sovereign in the July 11, 2008 letter was that Sovereign was "unable to determine who was authorized to act on behalf of the entities listed" in the letter.  However, the account holders informed Sovereign that all signature cards on file were correct and listed the only individuals authorized to act on the accounts.  The fact that all of the frozen accounts with any material assets in them were unfrozen immediately after Sovereign received information it needed to investigate plaintiffs Phone, Escom and Consultants' claims against Sovereign demonstrates that Sovereign's true motivation was to forcibly extract information for its defense that it otherwise could obtain only with a valid subpoena or through proper discovery.  Moreover, none of the highly confidential documents sought in the July 11, 2008 letter from Sovereign were included in the list of items Boulay informed the plaintiffs Phone, Escom and Consultants would be necessary for Sovereign to proceed with its investigation of the missing funds, showing that these document and information demands were improperly sought by Sovereign and Gaudet out of retaliation and/or for use by Sovereign's attorneys to respond to the plaintiffs' Chapter 93A letter.

63.   Sovereign also improperly insisted in July 2008 that all (or almost all) of the Sovereign accounts listed in the July 11, 2008 letter have new signature cards signed even though there was no problem with any of the prior signature cards - none of which listed Britt as a signatory.

64.   On or about August 21, 2008, Sovereign closed IREG's $50,000 Line of Credit without any notice or proper reason. Moreover, Sovereign did not send any letter notifying IREG of this closure until September 16, 2008 - after IREG attempted to use this Line of Credit for a business purpose.  The closure of this Line of Credit by Sovereign was done without any good cause and in bad faith, apparently to retaliate against IREG for having its affiliated companies Phone, Escom and Consultants assert their legal rights under Chapter 93A against Sovereign a few weeks earlier.  Although Sovereign has now claimed that this closure was due to credit concerns, this claim is pretextual since at no time did Sovereign contact IREG to request additional security or guarantors for this line of credit.

COUNT I

(All plaintiffs for Breach of Contract and/or the UCC)

65.   The plaintiffs hereby fully restate by reference all of the allegations contained in paragraphs 1 through 64 of this Complaint.

66.   Each of the plaintiffs had a contractual relationship with Sovereign for their respective bank accounts.  The terms of this contractual relationship were dictated by the common law and/or by Massachusetts statutory law including but not limited to Mass. Gen. L. c. 106 (the Uniform Commercial Code or "UCC").

67.   Sovereign's actions towards each of the plaintiffs was in violation of their contractual and/or UCC obligations to that plaintiff.

68.   As a result of Sovereign's breaches and wrongful actions towards each of the plaintiffs, each of the plaintiffs has been harmed.

69.   Sovereign must pay each of the plaintiffs their respective damages, including but not limited to lost funds and lost profits.

COUNT II

(All plaintiffs for Breach of the Covenant<br>of Good Faith and Fair Dealing)

70.   The plaintiffs hereby fully restate by reference all of the allegations contained in paragraphs 1 through 69 of this Complaint.

71.   There existed a covenant of good faith and fair dealing in the contractual relationship between Sovereign and each of the plaintiffs.

72.   Sovereign's actions towards each of the plaintiffs was in breach of their covenant of good faith and fair dealing obligations.

73.   Sovereign's breach of the covenant of good faith and fair dealing has resulted in harm to each of the plaintiffs.

74.   Sovereign must pay each of the plaintiffs their respective damages, including but not limited to lost funds and lost profits.

COUNT III

(All plaintiffs for Negligence)

75.   The plaintiffs hereby fully restate by reference all of the allegations contained in paragraphs 1 through 74 of this Complaint.

76.   Sovereign owed each of the plaintiffs a duty of care with respect to their respective bank accounts.

77.   Sovereign was negligent in the discharge of this duty of care to each of the plaintiffs.

78.   As a result of Sovereign's negligence, each of the plaintiffs has been harmed.

79.   Sovereign must pay each of the plaintiffs their respective damages, including but not limited to lost funds and lost profits.

## COUNT IV

### (All plaintiffs for Equitable Estoppel)

80.    The plaintiffs hereby fully restate by reference all of the allegations contained in paragraphs 1 through 79 of this Complaint.

81.    Through its use of signature cards and other bank account formalities allegedly designed to safeguard bank account assets and checks, Sovereign made a representation, or conduct amounting to a representation, that was intended to induce a course of conduct on the part of the plaintiffs to stay with Sovereign and to use Sovereign for their banking transactions. Sovereign then failed to limit check signatures and endorsements to the people on the applicable account signature cards, which was an act or omission resulting from the representation, resulting in detriment to each of the plaintiffs as a consequence.

82.    Sovereign's wrongful actions have resulted in harm to each of the plaintiffs.

83.    Sovereign must pay each of the plaintiffs their respective damages, including but not limited to lost funds and lost profits.

COUNT V

(All plaintiffs for Violation of Mass. Gen. L. c. 93A)

84.    The plaintiffs hereby fully restate by reference all of the allegations contained in paragraphs 1 through 83 of this Complaint.

85.    Sovereign is engaged in trade or commerce in the Commonwealth of Massachusetts.  The wrongful acts of Sovereign alleged in this Complaint occurred primarily and substantially within the Commonwealth of Massachusetts.

86.    Sovereign has violated Mass. Gen. L. c. 93A by harming each of the plaintiffs through the use or employment of unfair, deceptive and/or unlawful acts or practices.

87.    Sovereign's wrongful actions towards each of the plaintiffs was willful or intentional, and has caused each of the plaintiffs to lose property and/or money which Sovereign should pay to the plaintiffs as damages.

88.    Each of the plaintiffs is also entitled to multiple damages from Sovereign, as well as payment of its reasonable attorney's fees and costs.

WHEREFORE, the plaintiffs, individually and jointly, hereby respectfully requests this Honorable Court to:

1.    Enter judgment in favor of each of the plaintiffs and against the defendant Sovereign Bank for the full amount of each of the plaintiffs' damages;

2.    Treble any damages award against Sovereign pursuant to Mass. Gen. L. c. 93A;

3.    Award the plaintiffs their reasonable attorneys fees, costs and interest; and

4.    Order such other relief to the plaintiffs – including but not limited to preliminary and permanent relief - as the Court deems just, necessary, equitable and/or appropriate.

### JURY DEMAND

THE PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS OF THE COMPLAINT.

Respectfully submitted,

PHONE.COM, LLC; ESCOM, LLC; CONSULTANTS.COM, LLC; LOVE TACTICS, LLC; RELATIONSHIP.COM, LLC; and INTERNET REAL ESTATE GROUP, LLC,

By their attorneys,

Geoffrey R. Bok (BBO #550851)
John M. Simon (BBO #645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated:  October 1, 2008