UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHONE.COM, LLC and ESCOM, LLC, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SOVEREIGN BANK, )<br>)<br>Defendant. )<br>) | Civil Action No. 08-11717-WGY |

**OPPOSITION OF DEFENDANT SOVEREIGN BANK TO PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE COLLATERAL SOURCE PAYMENTS**

Defendant Sovereign Bank ("Sovereign") hereby opposes the Motion in Limine to Exclude Collateral Source Payments and its Memorandum in support (jointly, the "Motion"; Docket Nos. 34 and 35) filed by remaining plaintiffs Phone.com, LLC ("Phone") and Escom, LLC ("Escom") at the upcoming trial of this case. The primary problem with plaintiffs' Motion is that the recovery evidence that they are seeking to exclude at the trial is not "collateral source" payments at all. Indeed, the recoveries are in large part a portion of the actual funds from checks that the plaintiffs claim were wrongfully deposited into bank accounts of their controller Christopher Britt ("Britt"), the person who perpetrated the fraud at issue, or Britt's company, Priviley, LLC ("Priviley"). Such recoveries necessarily reduce the plaintiffs' actual out-of-pocket losses that are recoverable in this action.

Moreover, the Motion misleadingly tries to portray the remaining plaintiffs, Phone and Escom, as entities that are unrelated to former plaintiff Internet Real Estate Group, LLC

("IREG"), which was the recipient of the recovery funds at issue.[1] The unrebutted evidence establishes that IREG is the managing member of Phone, with responsibility for its finances. In addition, IREG's manager Andrew Miller ("Miller") and former manager Peter Hubshman ("Hubshman") are managing members of Escom through intermediate entities, and they clearly controlled Escom's finances during the time period at issue. Thus, Phone and Escom cannot successfully avoid the fact that a substantial portion of the proceeds of the fraud that they are seeking to recover from Sovereign has already been paid back to the related entity IREG, which was in charge of the finances of the plaintiffs. These recoveries thereby reduce their damages, and should be considered by the jury.

## I.   FACTUAL BACKGROUND

### A.   Financial Management of Phone.

Former plaintiff IREG is a managing member of Phone. Limited Liability Company Agreement of Phone.com, LLC (dated March 28, 2006) at 14, ¶ 5.02, Ex. 1 to Affidavit of J. Patrick Kennedy (the "Kennedy Aff.");[2] Deposition of Andrew Miller (April 9, 2009) (the "Miller Depo.") at 15:9-12, Ex. 2 to Kennedy Aff. Miller was a founder and is a manager of IREG. Miller Depo. at 6:16-21, Ex. 2 to Kennedy Aff. Hubshman was a founder of IREG, and was its manager and Chief Financial Officer, and served in that role for Phone, until his departure in November 2007. Miller Depo. at 6:18-19 & 57:21-58:20, Ex. 2 to Kennedy Aff. IREG had responsibility for Phone's finances in 2007. Miller Depo. at 58:13-20, Ex. 2 to Kennedy Aff. IREG continued to have responsibility for Phone's finances in spring 2008, as

---

[1] IREG and several other affiliated entities (Consultants.com, LLC, Relationship.com, LLC and Love Tactics, LLC) were plaintiffs in this case until very recently, when they were dismissed via the filing of a Fed. R. Civ. P. 41(a)(1)(ii) dismissal stipulation on October 26, 2009. See Docket No. 30.

[2] The Affidavit of J. Patrick Kennedy (the "Kennedy Aff.") with its attached exhibits is being filed herewith to authenticate the documents and deposition transcript excerpts that are being cited in this Opposition. Exhibits 1 and 4-6 to the Kennedy Aff. are the subject of a separate Assented-to Motion to Impound or File Under Seal Certain Exhibits because they contain highly proprietary and confidential information of the plaintiffs.

IREG's new Chief Financial Officer Donn Worby discovered a discrepancy in Phone's 2007 year-end books relating to the missing investor check in the amount of $150k that is at issue in this case.  Deposition of Donn Worby Pursuant to Fed. R. Civ. P. 30(b)(6) (April 7, 2009) (the "Worby Depo.") at 124:9-24 & 125:20-128:3, Ex. 3 to Kennedy Aff.

   B.   **Financial Management of Escom.**

Miller and Hubshman are managing members of an entity known as DNAG Holdings, LLC ("DNAG Holdings").  Limited Liability Company Operating Agreement of DNAG Holdings, LLC (dated Oct. 11, 2005) at 2, ¶ 1.07, Ex. 4 to Kennedy Aff.  DNAG Holdings is, in turn, a managing member of Domain Name Acquisition Group, LLC ("DNAG").  First Amended Limited Liability Agreement of Domain Name Acquisition Group, LLC (dated Jan. 12, 2006) at 2, ¶¶ 1.07 & 1.08, Ex. 5 to Kennedy Aff.  DNAG was one of the founders and owns the largest number of membership units of plaintiff Escom.  Fourth Amended and Restated Limited Liability Company Agreement of Escom, LLC (dated March 21, 2008) at 1 & Schedule A ("Escom LLC Agreement"), Ex. 6 to Kennedy Aff.  As a founder of Escom, DNAG has the right to appoint one of the three managers of Escom.  Id. at 15, ¶ 5.02, Ex. 6 to Kennedy Aff.  Miller is one of the managers of DNAG Holdings and is also a manager of DNAG (in addition to DNAG Holdings), which is in turn a manager of Escom.  Miller Depo. at 15:17-16:21, Ex. 2 to Kennedy Aff.  The managers of Escom have authority to allow banking transactions to be conducted "on such signature or signatures" as they approved.  Escom LLC Agreement at 24, ¶ 6.05, Ex. 6 to Kennedy Aff.

   C.   **The Recovery Evidence.**

Proceeds of Escom Check:  The evidence establishes that Britt repaid a substantial majority of the funds at issue in this case very shortly after he deposited the official check made

898735-1                                              3

payable to Escom in the amount of approximately $304k into a bank account of Priviley. Sovereign's internal investigator assigned to this matter, Laura Boulay ("Boulay"), traced the funds associated with the Escom check, and confirmed nearly all the details of a summary document entitled "Disposition of Funds" (which was prepared by another Sovereign employee) showing payment of a substantial portion of these very funds to IREG shortly after the check was diverted.  <u>See</u> Exhibit C to Motion; Affidavit of Laura Boulay (being filed herewith) at ¶¶ 3-5. Boulay's analysis reveals the following transfers and payments:

1. $304,849.62 official check payable to Escom deposited into an account of Priviley (#xxxxxxxx8503) on March 6, 2008.[3]

2. From Priviley account (#xxxxxxx8503), transfer of $29,200.00 through six internet transfers (in the amounts of $7,500.00, $4,500.00, $2,000.00, $8,500.00, $5,700.00 and $1,000.00) into an account of IREG (#xxxxxxx6389) on March 11 and 21, April 9, and May 7 and 12, 2008.

3. Transfers totaling $98,500.00 from Priviley account (#xxxxxxx8503) into another account of Priviley (#xxxxxxx9029) on March 6, 18 and19, April 15 and 17, and May 5 and 19, 2008.[4]

4. From Priviley account (#xxxxxxx9029), transfer of $52,500 through two internet transfers (in the amounts of $45,000 and $7,500) into an account of IREG (#xxxxxxx6389) on March 6, 2009.

5. From Priviley account (#xxxxxxx9029), an in-branch withdrawal of $52,054.60 and corresponding cash deposit into an account of IREG (#xxxxxxx4889) on March 10, 2008.[5]

6. Transfers totaling $35,255.00 from Priviley account (#xxxxxxx8503) into an account of Britt (#xxxxxxx7803) on March 21, April 14, 17 and 24, and May 5 and 7, 2008.

---

[3] The "Disposition of Funds" document has a minor typographical error attributing too many numerical digits to the Sovereign bank account of Priviley into which the Escom check was deposited.  However, the reference to the Priviley bank account number does have the last four digits correct.

[4] The "Disposition of Funds" document shows these transfers as totaling $100,871.69 (a difference of approximately $2,300), which Boulay was unable not confirm through her review of Sovereign's records.

[5] The Motion incorrectly argues that Sovereign is attempting to double-count the deposit of $52,054.60 into an account of IREG on March 10, 2008.  <u>See</u> Motion at 3.  That is not the case.  The recovery/credit analysis set forth in the Joint Pre-Trial Memorandum (Docket No. 33 at 23 n.2) only counts this credit once.  Sovereign agrees that the check in the same amount that was originally deposited into IREG's account on March 5, 2008 (and re-deposited on March 10, 2008) was returned twice for insufficient funds.  Sovereign has only counted this credit once.

>   7. Check in the amount of $11,709.75 drawn on account of Britt (#xxxxxxx7803) and deposited into an account of IREG (#xxxxxxx4889) on May 5, 2008.

See Boulay Aff. at ¶¶ 3-5; Ex. C to Motion. Item Nos. 2, 4, 5 and 7 above are thus repayments from Priviley and/or Britt to IREG of funds that directly originated from the Escom check in the amount of $304,849.62.[6] These repayments to IREG were in the total amount of $145,464.35. At the time of these repayments, and continuing through the present, Miller was a manager of IREG and a manager of one of the managing members of Escom.

$100,000 Payment from Britt: The evidence also establishes that Britt paid $100,000 to IREG, for the benefit of plaintiffs Phone and Escom, in June 2008 in the course of settlement negotiations concerning unauthorized banking transactions he had undertaken while controller of IREG and its affiliated companies. At the Fed. R. Civ. P. 30(b)(6) deposition of the plaintiffs, the plaintiffs' designee Donn Worby, the Chief Financial Officer of IREG, testified that the $100,000 in funds paid by Britt in the form of an "official check," which was purchased with funds from a Sovereign bank account in the name of Priviley, was being held by IREG in escrow to be allocated on a pro rata basis among and paid to the plaintiffs (now Phone and Escom only) once this litigation has been concluded. Worby Depo. at 199:16-200:17, Ex 3 to Kennedy Aff. IREG is the manager of Phone, and its manager Miller is a manager of the managing member of Escom.

---

[6] The Motion contends that these repayments, as a factual matter, were made to compensate IREG or other non-plaintiff affiliated entities for losses they incurred as a result of other fraudulent transactions conducted by Britt. See Motion at 3-5. There is absolutely no reliable support for plaintiffs' position in the Motion. The Motion purports to provide support through its attached Exhibit A, which is a document that was never produced in discovery, is not authenticated or reliable, and appears to have been created solely for purposes of the Motion. It should be stricken from the Motion record because it is unreliable and unauthenticated. See Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000); Goguen v. Textron, Inc., 234 F.R.D. 13, 15-17 (D. Mass. 2006). Sovereign is thus filing a separate motion to strike. In any event, if IREG did pay over funds recovered from Britt/Priviley from the checks at issue in this case to other related entities such as Shop.com, LLC or keep such funds for its own benefit, then the plaintiffs should demand that IREG or the recipient of those funds compensate them for their losses. There is no justifiable basis for holding Sovereign responsible for IREG's decision to compensate itself or other affiliated entities for other fraudulent transactions undertaken by Britt.

**D.       Plaintiffs' Unjust Enrichment.**

Again without citation to authority other than its attached Exhibit A, the Motion contends that as a factual matter the plaintiffs will not be unjustly enriched if the recovery evidence is excluded from the trial.  See Motion at 5-6.  This argument is specious as Exhibit A to the Motion was not produced in discovery, lacks foundation, and has not been properly authenticated.  It therefore should be stricken or deemed unreliable by the court.  See Carmona, 215 F.3d at 131 (documents must be properly authenticated with affidavit testimony in order to be properly considered for summary judgment); Goguen, 234 F.R.D. at 15-17 (granting motion to strike exhibits that were not self-authenticating because no affidavit was submitted).

In any event, as established in this Opposition and referenced in Sovereign's section of the Joint Pre-Trial Memorandum, see Docket No. 33 at 22-23, the recoveries received by IREG for the benefit of the plaintiffs total approximately $245,464 -- not $177,925 as set forth in the Motion.  Thus, it is clear that the plaintiffs and/or their affiliated company IREG will receive a gross windfall if the recovery evidence is excluded from trial.  If the plaintiffs prove their case at trial, they are only entitled to recover their out-of-pocket damages.  Excluding the recovery evidence will create a substantial risk that the plaintiffs may be awarded significantly more than their actual damages -- a windfall -- at the expense of Sovereign.

As discussed in greater detail below, the bottom line is that the recovery evidence should not be excluded because it does not constitute "collateral source" payments at all.  Rather, the evidence is appropriate to establish the actual amount of any damages suffered by the plaintiffs pursuant to the non-tort legal theories on which they plan to proceed at trial.

## II. ARGUMENT

### A. The Recoveries Are Not Collateral Source Payments At All.

The entire premise of the Motion is that the recovery evidence should be excluded because it constitutes "collateral source" payments. The problem with this argument is that the recovery evidence does not constitute "collateral source" payments at all. As set forth above, and as will be established by the evidence at trial, the recovery payments were made by the perpetrator of the fraud -- Britt -- not by an otherwise uninvolved third-party such as a medical coverage provider, benefits company, or an insurance company that was contractually obligated to make payment upon presentation of a valid proof of claim.

More importantly, the recoveries were funds directly obtained by Britt (or his company, Priviley), and then paid back for the benefit of the plaintiffs, from the diverted checks themselves. Thus, the recoveries were obtained from the fruit of the actual fraud. As such, they can hardly be labeled as "collateral source" payments at all. They are more properly classified as funds recovered in direct mitigation of any contractual or UCC damages suffered by the plaintiffs.

In trying to mislabel the recoveries as "collateral source" payments, the Motion highlights a statement by the Massachusetts Supreme Judicial Court that the "collateral source" rule applies to payments "'from an accident insurance policy, from workmen's compensation, from an employer, or from other sources.'" Motion at 8 (quoting Goldstein v. Gontarz, 364 Mass. 800, 808-09 (1974) (internal citations omitted; emphasis added); see also Scott v. Garfield, 454 Mass. 790, 800-01 (2009). Yet, in every one of the decisions cited by and relied upon in the Motion, the source of funds at issue was an otherwise uninvolved third-party such as an insurance provider or benefits company that was contractually obligated to make payment or

restitution to the recipient of the benefits. See, e.g., Scott, 454 Mass. at 800-01 (reduction of medical bills due to medical insurance coverage); Corsetti v. The Stone Co., 396 Mass. 1, 16 (1985) (social security and worker's compensation benefits); Goldstein, 364 Mass. at 807-10 (worker's compensation); Jones v. Cincinnati, Inc., 32 Mass. App. Ct. 365, 372, rev. den., 412 Mass. 1105 (1992) (worker's compensation and social security benefits); Shea v. Rettie, 287 Mass. 454, 457-58 (1934) (accident or disability insurance payments); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 183-84 (1985) (welfare benefits); Fitzgerald v. Expressway Sewerage Constr., Inc., 177 F.3d 71, 734 (1st Cir. 1999) (health care insurance payments). None of the cited cases involved recoveries received from an actual wrong-doer who repaid the very funds that were the subject of the case.

Even the "seminal" law review article cited by and attached to the Motion support Sovereign's position that the recovery evidence does not constitute "collateral source" payments. The article by Professor Fleming, entitled The Collateral Source Rule and Contract Damages, 71 Cal. L. Rev. 56 (1983) (Exhibit D to Motion), discusses application of the rule in contract cases according to the type of loss suffered. See id. at 73 ("Type of Loss"). In cases of purely "Economic Loss," the category into which the present case surely falls, Professor Fleming makes clear that successful mitigation efforts and satisfaction of the loss or any portion thereof by a responsible party do not constitute "collateral source" benefits:

> As regards action taken after breach, the plaintiff is of course under a duty to take reasonable steps in mitigation. Whether he does so or not, avoided or avoidable loss reduces the defendant's liability. Problematic only is the situation where the gain results from action the plaintiff was not required to take. Here the rule appears to be that he must give credit for gains arising out of the act of mitigation itself.
>
> * * *

>Second, another distinction in the economic loss situation is that any partial or complete satisfaction of the plaintiff's loss by one liable therefore extinguishes *pro tanto* the liability of any other person liable for the same loss. That recovery from one tortfeasor, whether pursuant to a successful action or settlement, satisfies *pro tanto* the liability of co-tortfeasors is a universally recognized exception to the collateral source rule even in the tort context. In other words, such payments are not considered "'collateral.'" But the principle applies regardless of the nature of the plaintiff's cause of action against the several defendants.

Id. at 76 (footnotes omitted).

Massachusetts law is in accord with Professor Fleming's viewpoint. It is, of course, black letter law in Massachusetts that parties who have suffered damages as a result of a breach of contract have a duty to mitigate their damages. See Krasne v. Tedeschi, 436 Mass. 103, 109-10 (2002); Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 586-87 (1982). The plaintiff's damages are reduced by any amount recovered in mitigation -- which is exactly what happened here. Moreover, the fact that UCC defenses available to Sovereign in this action incorporate comparative and contributory negligence concepts, see Motion at 9, does not convert this action into a tort case or the recovery evidence into "collateral source" payments. See Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc., 61 Mass. App. Ct. 158 (2004) (table) (holding that evidence of availability of reinsurance and party's decision not to reinsure the risk at issue was not "collateral source" evidence, and was relevant to the jury's consideration of comparative negligence).

Even in tort cases, a plaintiff tortiously injured by two wrongdoers is only entitled to one recovery, "and payment received from one must be considered in mitigation of the damages assessed against the other." Brown v. Leighton, 385 Mass. 757, 764 (1982) (O'Connor, J., dissenting) (citing Tritsch v. Boston Edison Co., 363 Mass. 179, 182 (1973)). In Tritsch, the Massachusetts Supreme Judicial Court held that a "plaintiff cannot properly receive

remuneration in excess of his actual damages." 363 Mass. at 182.  The same principle applies with even greater force in non-tort cases such as the present action.

Moreover, since this is not a tort case, plaintiffs' argument that no credit should be given to Sovereign for the recoveries because the plaintiffs have not settled with and obtained a release from Britt and/or Priviley has no relevance whatsoever.  See Motion at 7 (citing M.G.L. c. 231B, § 4).  Indeed, the only tort count of negligence asserted by the plaintiffs was dismissed by Fed. R. Civ. P. 41(a)(1)(ii) stipulation several months ago.  See Docket No. 29.  There is no active tort claim in this case.  The Motion itself describes the action by stating that, at trial, the plaintiffs will be pursuing only state law claims for (i) violation of the Uniform Commercial Code as adopted in Massachusetts (the "UCC"); (ii) breach of the covenant of good faith and fair dealing inherent in all contracts; and (iii) violation of Chapter 93A of the Massachusetts General Laws.  See Motion at 1-2.  Thus, the Massachusetts joint tortfeasor statute, M.G.L. c. 231B, § 4, cannot be used to diminish Sovereign's right to receive a credit for the substantial recoveries paid by a responsible party -- Britt, the person who perpetrated the fraud -- for the benefit of the plaintiffs.

### B. The Recovery Evidence Is Relevant To Establish The Amount Of Damages, If Any, Actually Suffered By The Plaintiffs Under Applicable UCC And Contract Law.

The Motion expends great energy in arguing that the "collateral source" rule is applicable not only in tort cases brought under Massachusetts law, but also in breach of contract cases.  Yet, the Motion fails to cite a single decision applying Massachusetts law in which the court expressly held that the "collateral source" rule applies in a non-tort case.  What the Motion also fails to do, however, is properly discuss the damages issues inherent in UCC cases such as this one.  In UCC cases, the predominant damages methodology is to provide a means for recovery

placing the victim in the same position he would have been in absent a violation of law, without recovery of a windfall or punitive damages.

Admission of the recovery evidence is consistent with the applicable damages doctrine for UCC cases that prevailing plaintiffs are entitled only to damages sufficient to restore them to the position they would have been in absent the breach or a violation of law.  See M.G.L. c. 106, § 1-106(1) ("the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this chapter or by other rule of law").  For example, in Interco, Inc. v. The First Nat'l Bank of Boston, 560 F.2d 480 (1st Cir. 1977), a Massachusetts UCC case, the U.S. Court of Appeals for the First Circuit noted that the proper damages remedy for a breach of the UCC would be consistent with contract damages under the common law -- "an amount of money which would 'put [the plaintiff] in as good a position as if (the Bank) had fully performed.'"  Id. at 485 (quoting M.G.L. c. 106, § 1-106(1)).

In this case, although the plaintiffs have not articulated the particular UCC provisions under which they are seeking relief, they appear to be proceeding on the theory that Sovereign converted the proceeds of third-party checks made payable to the plaintiffs that were deposited into an account of Priviley -- a claim under UCC § 3-420(a).  See Motion at 9 (citing M.G.L. c. 106, § 3-420(b)).  Although the starting presumption under that UCC provision is that the "measure of liability is . . . the amount payable on the instrument," M.G.L. c. 106, § 3-420(b), the measure of liability is always reduced by any recoveries received by the plaintiff.  Thus, as expressly stated in Official Comment 3 to UCC § 3-420, when a lawsuit in conversion is brought against more than one responsible party such as payor and depositary banks, the plaintiff "of course, is entitled to but one recovery."  Official Comment 3 to M.G.L. c. 106, § 3-420.

The same damages rule applies here. When the plaintiffs have already recovered a substantial portion of the proceeds of the checks from the person who perpetrated the fraud, the plaintiffs' unrecovered interest in the checks that were allegedly converted is the proper measure of damages under the UCC. That measure of damages is the "amount payable on the instrument" -- the checks -- less the recoveries of funds on the checks already received for the benefit of the plaintiffs. See M.G.L. c. 106, § 1-106(1); Official Comment 3 to M.G.L. c. 106, § 3-420.

Finally, the same rule applies if the plaintiffs ultimately pursue and obtain relief on their breach of implied covenant of good faith and fair dealing claim rather than their UCC claim.[7] An implied covenant claim is an alternative theory but closely related to a breach of contract claim. The damages analysis is the same. In a recent breach of contract case, the First Circuit held that the "collateral source" rule did not apply to bar the consideration of insurance benefits that limited the damages available to plaintiffs who were seeking an award of retirement benefits following a corporate merger. LaRocca v. Borden, Inc., 276 F.3d 22, 30 (1st Cir. 2002). The court stated that "[t]he plaintiffs who obtained alternative sources of insurance were, in effect, mitigating their damages. The law often obliges the victim of a breach of contract to mitigate damages." Id. (citing Restatement (Second) of Contracts § 350 cmt. b (1981)); see also Lussier v. Runyon, 50 F.3d 1103, 1107-110 (1st Cir. 1995) (affirming trial court's exercise of discretion to allow admission of collateral benefits evidence in wrongful discharge case seeking "front pay").

---

[7] The plaintiffs, of course, would not be entitled to double-recovery even if they were to prevail on both UCC and implied covenant claims at trial.

### C. The Plaintiffs Cannot Hide Behind Affiliated Company IREG To Avoid Having The Recovery Evidence Applied To Reduce Their Damages.

The plaintiffs argue that the recovery evidence should not be admitted even if the "collateral source" rule does not apply because the repayments were made to former plaintiff IREG, not current plaintiffs Phone and Escom.  See Motion at 9-10.  By doing so, the plaintiffs are seeking to hide the recovery payments from the jury by having their affiliated company IREG continue to hold the funds.  They are also seeking to hide the inter-relationships between the companies from the jury.

The court should reject this argument because the facts establish that IREG is a manager of Phone, with responsibility for its finances.  In addition, Miller is a manager of IREG and is also a manager of the managing member of Escom through intermediate entities.  Thus, IREG and its manager Miller have actual authority, and likely a fiduciary obligation, to ensure that the plaintiffs are repaid the amounts that were recovered from the fruits of the fraud conducted by Britt.  IREG and Miller have actual control over the finances of the involved entities, including banking transactions and decisions.

IREG and Miller thus have the actual authority and responsibility to ensure that plaintiffs Phone and Escom are reimbursed with the funds that were actually recovered from the checks at issue from Britt and/or Priviley.  Indeed, at the Fed. R. Civ. P. 30(b)(6) deposition of the plaintiffs (which at that time included IREG), the plaintiffs' witness Donn Worby testified under oath that the $100,000 payment received from Britt in June 2008 was being held in escrow by IREG for the benefit of the plaintiffs once this litigation is resolved.  See Worby Depo. at 199:16-200:17, Ex 3 to Kennedy Aff.  It thus could not be more apparent that the recovery evidence is relevant to any damages calculation that the jury may be asked to conduct during its deliberations.

### D. The Recovery Evidence Should Be Presented To The Jury.

Not only is the recovery evidence directly relevant and necessary in order to calculate the plaintiffs' actual damages, if any were suffered, it is not too complex for the jury to consider. Contrary to the argument contained in the Motion (at 10-11), there is no substantial chance of a miscarriage of justice if the recovery evidence is presented to and considered by the jury, as it is not "collateral source" payments that are subject to exclusion. The evidence consists of repayments by Britt and Priviley of the actual funds diverted from the checks at issue to the plaintiffs' affiliated company IREG, which is holding at least a substantial portion of the funds in escrow for the benefit of the plaintiffs.

Moreover, any possible jury confusion (or alleged prejudice) can be alleviated by the plaintiffs through their introduction of other evidence and argument to the jury that the repayments made by Britt/Priviley were for other fraudulent transfers or transactions conducted by Britt -- just as they have done in their eleven-page Motion. Since this is not a tort case where one joint tortfeasor has settled out before trial, there is no justifiable ground to follow the practice requested by the plaintiffs in the Motion of withholding this evidence from the jury and treating the substantial recoveries as a post-trial reduction to any judgment administered by the court. As this court has recently articulated, juries "have the capacity to grapple with and pass judgment on a dizzying array of issues that face us as a society." Massachusetts Eye and Ear Infirmary v. QLT, Inc., 495 F. Supp.2d 188, 198 (D. Mass. 2007), aff'd, 552 F.3d 47 (1st Cir. 2009). That is exactly the process that should be employed here. Indeed, it would be grossly unfair and prejudicial to Sovereign to allow only plaintiffs' evidence to be presented to the jury -- while relevant damages evidence is withheld from the jury.[8]

---

[8] Indeed, if the plaintiffs' position in the Motion were to prevail, it is clear that Sovereign was prejudiced by the plaintiffs' settlement negotiations with Britt, the perpetrator of the fraud. Had plaintiffs or their affiliate IREG given

898735-1                                14

### III. CONCLUSION

For all the reasons set forth above, Sovereign respectfully requests that the Court deny the plaintiffs' Motion in Limine to Exclude Collateral Source Payments. The recovery evidence is not "collateral source" payments, and should be presented to the jury in mitigation of any damages allegedly suffered by the plaintiffs regarding the checks at issue.

SOVEREIGN BANK,
By its Attorneys,


*/s/ J. Patrick Kennedy*
Donn A. Randall, BBO# 631590
J. Patrick Kennedy, BBO# 565778
Matthew A. Kane, BBO# 669051
Bulkley, Richardson and Gelinas, LLP
98 North Washington Street, Suite 500
Post Office Box 9750
Boston, MA  02114-0016
(617) 368-2500
Email:  pkennedy@bulkley.com

Dated: January 25, 2010


### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Sovereign Bank requests that the Court schedule a hearing for oral argument concerning plaintiffs' Motion. Counsel believes that oral argument may assist the Court in its consideration of the merits of the Motion.

*/s/ J. Patrick Kennedy*
J. Patrick Kennedy

---

Sovereign notice of the fraudulent check transactions on a timely basis, Sovereign could have seized or frozen the funds in the Sovereign bank accounts of Priviley and Britt. Sovereign then could have applied the recovered frozen funds against the claims asserted against it. It is unseemly for the plaintiffs to take settlement funds themselves, to the detriment of Sovereign, and then to cry "foul" when Sovereign seeks its entitlement, as grounded in UCC and contract law, to a damages offset for those recoveries.

898735-1                                   15

**CERTIFICATE OF SERVICE**

      I, J. Patrick Kennedy, hereby certify that a true and correct copy of the above document was served upon the attorney of record for each other party via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on January 25, 2010.

                                              */s/ J. Patrick Kennedy*
                                              J. Patrick Kennedy