**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                )
PHONE.COM, LLC and ESCOM, LLC,   )
                                )
          Plaintiffs,         )
                                )
          v.            )      Civil Action No. 08-11717-WGY
                                )
SOVEREIGN BANK,              )
                                )
          Defendant.      )
_____)

**OPPOSITION OF DEFENDANT SOVEREIGN BANK TO PLAINTIFFS'**
**MOTION TO COMPEL PRODUCTION OF BOULAY REPORT AND CASE NOTES**

Defendant Sovereign Bank ("Sovereign") hereby opposes the Motion to Compel Production of Boulay Report and Case Notes and its Memorandum in Support (jointly, the "Motion"; Docket Nos. 36 and 37) filed by remaining plaintiffs Phone.com, LLC ("Phone") and Escom, LLC ("Escom"). The Motion should be denied because it fails to comply with the Local Rules, is untimely, and because disclosure of the report and notes is clearly not necessary in the interests of justice.

**I.**      **FACTS AND PROCEDURAL HISTORY**

**A.**      **Introduction**

This action involves the theft of company funds by the plaintiffs' former controller, Christopher Britt ("Britt"). The fraud was discovered in May 2008 following Sovereign's notification to the plaintiffs' affiliate of suspicious activity being conducted in several bank accounts. From the beginning, the plaintiffs have maintained a litigious posture vis-à-vis Sovereign. Ex. A to Affidavit of Matthew A. Kane ("Kane Aff."). The plaintiffs' lawyer served Sovereign with a written demand and claim summary on June 18, 2008, id. at 1, 4 (claim

summary and demand for reimbursement served on Ms. Boulay on June 18, 2008), followed

shortly thereafter by a written demand letter referencing Mass. Gen. Laws c. 93A on July 9,

2008.  Id.

The plaintiffs and former plaintiffs[1] filed suit against Sovereign in state court on October

2, 2008.  Sovereign removed the case to the United States District Court for the District of

Massachusetts on October 8, 2008.  That same month, Sovereign's internal investigator assigned

to this matter from the bank's Loss Prevention & Security Department, Laura Boulay, prepared

the two page report that is the subject of the plaintiffs' Motion.  Deposition of Laura Boulay, Ex.

A to Motion at 12:22-13:2.  At the time she prepared the report, Ms. Boulay knew about the

instant litigation and was in regular communication with both in-house and outside counsel.  See

id.; see also Ex. A to Kane Aff.  Indeed, Ms. Boulay first became involved in this matter in June

2008, after the plaintiffs had adopted a threatening posture.  See id. at 14:17-15:8 (Ms. Boulay

first heard of Britt, IREG, and the plaintiffs on June 9, 2008).  Her subsequent work on the case

was clearly performed in anticipation of litigation.  See Ex. A to Kane Aff.

The so-called "notes" are in fact ninety-five pages of consolidated e-mail correspondence

and notes regarding the plaintiffs' claims.  Most of the e-mails are to or from Sovereign's

attorneys or to or from the plaintiffs' employees.

**B.**      **Sovereign Objected to Producing the Report in May and June 2009**

The Court entered an Order on November 24, 2008 setting a discovery deadline of

September 4, 2009.  Docket No. 15.  After the parties moved jointly to extend the discovery

deadline on July 16, 2009, the Court entered an electronic Order on July 21, 2008 extending the

---

[1] The parties filed a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii) on October 26, 2009 dismissing the claims filed by Internet Real Estate Group, LLC ("IREG"), Consultants.com, LLC, Relationship.com, LLC and Love Tactics, LLC.

discovery deadline until September 29, 2009.  See Docket No. 21; Electronic Order dated July

21, 2009.

The plaintiffs served their First Request for Production of Documents ("Request for

Production") on March 24, 2009, describing thirty-six categories of documents, including:

> All reports, draft reports, notes, tape recordings, statements, correspondence and any other documents concerning any investigation by…Ms. Laura J. Boulay…or by anyone else at or for the Bank, into any of the events alleged in the Complaint.

Request for Production at Request No. 6, Ex. B to Kane Aff.

Sovereign served its Objections and Responses to the Plaintiffs' First Request for

Production ("Response to Request for Production") on May 4, 2009, within the agreed-upon time

limit for a response.  To the specific request cited, Sovereign responded as follows:

> Sovereign objects to this document request on the grounds that it is vague, overbroad and unduly burdensome.  Further responding, Sovereign objects to the extent that it calls for the production of documents protected by the [Suspicious Activity Report],[2] attorney-client, and/or work-product privileges.  Subject to and without waiving the foregoing Objections, <u>Sovereign states that it will not produce copies of investigative reports or draft reports prepared by its investigators as such documents are protected from disclosure by the work-product doctrine</u>, but will produce copies of all underlying bank documents reviewed in connection with such investigation.

Response to Request for Production at Response No. 6, Ex. C to Kane Aff. (emphasis added).

Sovereign's Response to Plaintiffs' Request for Production left no doubt that it would <u>not</u>

produce Ms. Boulay's investigative reports or notes.

What Sovereign did produce, however, was "copies of all underlying bank documents,"

Ex. C to Kane Aff. at Response No. 6, "concerning any investigation by…Ms. Laura J.

Boulay…or by anyone else at or for the Bank, into any of the events alleged in the Complaint,"

Ex. B to Kane Aff. at Request No. 6, which production included thousands of pages of account

statements, signature cards, canceled checks, wire transfer requests, non-privileged e-mail

---

[2] Sovereign is forbidden by federal law from disclosing the existence or contents of any Suspicious Activity Report ("SAR").  <u>See</u> 31 U.S.C. § 5318(g)(2); 31 C.F.R. § 103.18(e).

correspondence and other electronically stored information, and volumes of confidential policies and procedures governing the transactions at issue.

**C.**   **Sovereign Reiterated Its Objection at Ms. Boulay's Deposition on June 24, 2009**

The plaintiffs took Ms. Boulay's deposition on June 24, 2009.  See Ex. A to Motion at 1:16.  At the deposition, Sovereign reiterated that it would not produce Ms. Boulay's investigative report:

> Mr. Bok:       Patrick, are you taking privilege on that report?
>
> Mr. Kennedy: Yes, we are taking a privilege on the report.
>
> Mr. Bok:       And that is the work product privilege?
>
> Mr. Kennedy: Work product privilege.[3]
>
> Mr. Bok:       And you are going to take that even though she reviewed it in advance of this deposition?
>
> Mr. Kennedy: Yes.
>
> Mr. Bok:       I don't necessarily agree with you about that, but we will fight about that later.

Id. at 13:19-14:9.  At no point in the months after Sovereign's counsel stated that the report would not be produced did the plaintiffs move to compel or otherwise challenge Sovereign's objections in any way.

**D.**   **The Plaintiffs Did Nothing in Response to Sovereign's Objections**

The plaintiffs knew on May 4, 2009 that Sovereign would not produce investigative reports based upon articulated and well-founded objections.  Sovereign repeated its position at Ms. Boulay's deposition in June 2009.  Id.  Despite twice being told in no uncertain terms that

---

[3] Sovereign's Response to Request for Production asserts additional grounds for objecting to production, which have never been waived.  Those grounds include that the request is vague, overbroad, and unduly burdensome; that the requested documents are protected from disclosure by the attorney-client privilege; that the requested documents are protected from disclosure by statute; and that the requested documents are protected from disclosure because they are work product prepared two weeks after suit was filed.  See Ex. C to Kane Aff. at Response No. 6.

Sovereign would <u>not</u> produce Ms. Boulay's report, the plaintiffs chose not to press the issue until three and a half months had passed after the close of discovery, and more than eight and a half months after Sovereign first objected to its production.

There is no justification for this lengthy delay.  From the beginning of discovery in this action, Sovereign has been forthright about the existence of the report and notes and its well-reasoned reliance upon the privileges protecting them from disclosure.  Not only were Sovereign's objections un-rebutted, but counsel for plaintiffs stated the following on the record at the conclusion of Ms. Boulay's deposition:

> I have no further questions of this witness, subject to I am reserving the right to recall her if I get copies of her report that you and I are going to have to talk about.  But subject to that or her notes that she talked about, I am through.

<u>Id.</u> at 105:14-20.  The plaintiffs did not take any steps to compel or otherwise obtain the report and notes, however; nor did plaintiffs' counsel seek to recommence Ms. Boulay's deposition.  Their right to do so expired with the discovery period on September 28, 2009.

The parties worked together diligently to prepare a Joint Pretrial Memorandum, which they filed with the Court on December 21, 2009.  <u>See</u> Docket No. 33.  A final pretrial conference was held before the Court on that same date.  The plaintiffs raised a number of legal issues in the Joint Pretrial Memorandum and identified twenty-six contested exhibits, but nowhere in the forty-four page memorandum did the plaintiffs make a single mention of Ms. Boulay's report or notes.  Allowing the Motion now, after submission of the Joint Pretrial Memorandum and significant trial preparation, would unduly prejudice Sovereign.

## II.   ARGUMENT

### A.   The Motion Fails to Comply With Local Rule 37.1

The Motion should be denied because it fails to comply with Local Rule 37.1 of the United States District Court for the District of Massachusetts.  The Motion – styled "Motion to Compel" – does not contain a certificate of compliance with Local Rule 37.1, nor does it contain any information regarding a discovery conference or identify the discovery requests at issue.  See Wood v. Dennehy, 2009 U.S. Dist. LEXIS 14215, *3 (D. Mass. 2009) (denying motion to compel for failure to comply with Local Rule 37.1(b)); Syrjala v. Total Healthcare Solutions, Inc., 186 F.R.D. 251, 253-55 (D. Mass. 1999) (sanctioning defense counsel for failure to comply with Local Rule 37.1).  The Motion should therefore be denied.

### B.   The Plaintiffs' Motion to Compel is Untimely

Courts have considerable discretion in deciding whether a motion to compel has been timely filed.  See Modern Continental/Obayashi v. OSHRC, 196 F.3d 274, 280-81 (1st Cir. 1999) (denying petition for review of, *inter alia*, administrative law judge's denial of motion to compel filed three days after the expiration of discovery as untimely; reasoning that movant's lack of diligence in pursuing its own discovery requests was adequate grounds for denial); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (affirming lower court's ruling that motion to compel production of documents filed after dispositive motion deadline was untimely); see also Gault v. Nabisco Biscuit Co., 184 F.R.D. 620, 622 (D. Nev. 1999) (denying as untimely motion to compel filed 136 days after service of discovery responses and after close of discovery).  Even absent a Local Rule in Massachusetts or a specific deadline in the Scheduling Order that imposes a cut-off date for motions to compel, it is not unusual for Courts in Massachusetts to rule that such motions are untimely when they are filed as late in the

proceedings as the plaintiffs' Motion.  See, e.g., Ayala-Gerena, 95 F.3d at 93 (motion to compel filed on date of pretrial conference was untimely); Derderian v. Polaroid Corp., 121 F.R.D. 13, 14-18 (D. Mass. 1988); see also United States Fidelity & Guar. Co. v. Baker Material Handling Corp., 62 F.3d 24, 29 (1st Cir. 1995) (failure to bring motion to compel precluded allowance of post-judgment motion based on improper discovery practices).[4]

The Court should deny the Motion in the present case as untimely because it was filed over three and a half months after the close of discovery without any justifiable excuse for delay, even though the plaintiffs have had notice of Sovereign's objections since May 4, 2009.[5]  See Ex. C to Kane Aff.  Allowance of the Motion now would prejudice Sovereign and frustrate the purpose of the pretrial conference process, resulting in needless delay and collateral motion practice, including motions in limine to exclude the report and notes from evidence.

In Ayala-Gerena, the plaintiffs waited until the final pretrial conference to bring a motion to compel production of documents by the defendants.  95 F.3d at 93.  In affirming the district court's finding that motion was untimely, the First Circuit explicitly highlighted the fact that plaintiffs "waited more than one month after the second extended discovery deadline had elapsed to properly request an order from the district court.  [Plaintiffs'] claims that [defendants] were 'hiding' information is essentially irrelevant against the backdrop of their own lack of diligence…."  Id. at 94.  In the instant case, the plaintiffs waited until after the final pretrial conference, and more than three and a half months after the expiration of discovery, to file their Motion.  See id.  Moreover, the plaintiffs have not claimed that Sovereign was "hiding"

---

[4] Compare Heron Interact, Inc. v. Guidelines, Inc., 244 F.R.D. 75, 77-78 (D. Mass.  2007) (allowing motion to compel that was timely filed well before the deadline for dispositive motions and the final pretrial conference).

[5] See 7 James Wm. Moore, Moore's Federal Practice 3d § 37.05[2] (LEXIS 2008) ("courts generally should not permit discovery activity, even in the form of motions to compel, to continue past a cut-off date that precedes the final deadlines for parties to file substantive motions, and to make their submissions for the final pretrial conference").

anything.  To the contrary, Sovereign notified the plaintiffs more than eight and a half months

ago that it would not produce Ms. Boulay's report and notes.  The Motion in this case is more

untimely than the motion in <u>Ayala-Gerena</u>, and therefore should be denied.  <u>See id.</u> at 92-95.

**C.**     **<u>Federal Rule of Evidence 612 Does Not Apply</u>**

    Rule 612 of the Federal Rules of Evidence provides that, if a witness uses a writing to

refresh her memory before testifying, then an adverse party is permitted to inspect that writing

only if the court determines that disclosure is necessary in the interests of justice.  Fed. R. Evid.

612; <u>see</u> <u>Derderian</u>, 121 F.R.D. at 14-18.

    **(i)**     **<u>Ms. Boulay did not review the documents to refresh her memory</u>**

    As a threshold matter, the Court should deny the Motion because neither the Motion nor

Ms. Boulay's deposition transcript establishes that Ms. Boulay reviewed her report and notes for

the purpose of refreshing her memory.  <u>See</u> <u>Derderian</u>, 121 F.R.D. at 15 (before moving on to

decide that disclosure of plaintiff's notes was not necessary in the interests of justice, the court

noted explicitly that plaintiff testified at her deposition that she reviewed her notes the night

before "for the purpose of refreshing her memory"); <u>see also</u> <u>Heron Interact, Inc.</u>, 244 F.R.D. at

76-77 (finding that deposition testimony and affidavit of deponent both indicated that deponent

reviewed documents for the purpose of refreshing his memory).  Rather, the timing of Ms.

Boulay's deposition – taken within a year of her investigation – suggests that the events at issue

were still fresh in her mind.  <u>See id.</u> (eighteen months between time plaintiff began keeping notes

and the decision on defendant's motion to compel them).

    **(ii)**     **<u>Disclosure is not necessary in the interests of justice</u>**

    Disclosure can hardly be deemed "necessary" – as required by Fed. R. Evid. 612 – where

the plaintiffs did not file their Motion until eight and a half months after Sovereign asserted its

objections.  See Fed. R. Evid. 612.  Nor would disclosure serve the interest of justice.  The

plaintiffs' alleged need for production of the documents is far outweighed by Sovereign's

interest in protecting its work product and privileged communications.  See Fed. R. Evid. 612;

Derderian, 121 F.R.D. at 14-18; see also Smith & Wesson v. United States, 782 F.2d 1074, 1083

(1st Cir. 1986) (finding no abuse of discretion in district court's conclusion that disclosure was

not "necessary in the interests of justice); United States v. Mass. Maritime Academy, 762 F.2d

142, 157 (1st Cir. 1985) (same).

  To evaluate the movant's need for production, the court in Derderian considered factors

such as the parties' relative access to the information underlying the protected documents and the

passage of time between the creation of the protected documents and the deposition before which

they were reviewed.  Id. at 17.  In the case at bar, the plaintiffs had wide-open access to the

people, places, and things that are the subject matter of the report and notes.  See id.  Sovereign

produced "copies of all underlying bank documents reviewed in connection with" Ms. Boulay's

investigation.  Ex. C to Kane Aff. at Response 6.  Sovereign did not object to a single deposition

of its current or former employees noticed by the plaintiffs, five in all, and produced each of its

current employees at the plaintiffs' request.  The plaintiffs' suggestion that Sovereign had greater

access to Britt is absurd.  See Motion at 6.  The plaintiffs' own negligence is all that prevented

them from questioning Britt about his misdeeds during the term of his employment.  Following

his termination, the plaintiffs engaged in settlement negotiations with Britt's counsel, and

actually received a payment from Britt of $100,000.  The plaintiffs have no real need for the

report and notes.  They are simply trying to benefit from the fruit of Sovereign's labor.  See

Heron Interact, Inc., 244 F.R.D. at 78.

With respect to the lapse of time between the creation of the notes and the deposition, the Derderian court explicitly reasoned that the "lapse of eighteen months from the first events about which notes were taken (September, 1986) to the date of the deposition (March, 1988) is simply not that long a period of time, especially when all parties were aware of the events which form the basis of this dispute in September, 1986." Id. at 17.  In the present case, the report was created in October 2008, only nine months before Ms. Boulay's deposition, at a time when all parties were aware of the events alleged in the complaint.  See id.  In either case, the short lapse of time was insufficient to require disclosure in the interests of justice.  See id.  Like the moving party in Derdarian, the plaintiffs in this case have simply failed to demonstrate a sufficient need for production.  See id.

On the other hand, Sovereign has a strong interest in protecting the report and notes because they contain confidential attorney-client communications and were prepared for litigation.  See Fed. R. Civ. P. 26(b)(3) (codifying the work product privilege as stated in Hickman v. Taylor, 329 U.S. 496 (1947)); United States v. Textron Inc., 577 F.3d 21, 22-43 (1st Cir. 2009) (finding that tax accrual work papers prepared in anticipation of audited financial statements, not litigation, were not protected).[6]  The plaintiffs' Motion does not contest that the materials are protected by either of these doctrines, and in fact they are protected by both.

The so-called "notes" consist largely of e-mail communications between Sovereign employees and Sovereign's legal counsel and concern the subject matter of this litigation.  See

---

[6] The documents at issue in Textron – tax accrual work papers – were prepared for the purpose of obtaining an outside auditor's imprimatur on the financial statements of a publicly traded company, prior to any litigation having been contemplated or filed.  577 F.3d at 22-32.  In sharp contrast, the report in this case was prepared a week after the commencement of this litigation.  The notes also post-date Sovereign's learning of the plaintiffs' claims. Moreover, the Textron court grappled with public policy in favor of tax collection, a thumb on the scale in favor of disclosure that is not present in the instant case.  Id. at 31-32 ("tax collection is not a game…[u]nderpaying taxes threatens the essential public interest in revenue collection").  With these distinctions in mind, there is little doubt that the Textron court would find that the report and notes at bar were "*prepared for* any litigation or trial," id. at 29 (emphasis in original; internal citation omitted), and are therefore protected work product.

United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997).[7]  Sovereign has a strong

interest in protecting these privileged communications, and doing so serves the public interest.

See Upjohn Co. v. Unites States, 449 U.S. 383, 389-90 (1981) (encouraging full and frank

communication between attorneys and their clients promotes the broader public interest in the

observance of law and administration of justice).

    Moreover, all of the documents at issue were prepared for litigation.  See Fed. R. Civ. P.

26(b)(3); Hickman, 329 U.S. at 511-14; Textron Inc., 577 F.3d at 22-43.  The two-page report

was created in October 2008, after the commencement of this lawsuit, for the purpose of

defending this lawsuit.  Similarly, the notes do not contain a single entry pre-dating Sovereign's

receipt from the plaintiffs of notice of their alleged losses, losses for which the plaintiffs have

blamed Sovereign from the beginning.  Like the report, the notes were prepared with notice of

the plaintiffs' claims and for the purpose of consolidating information relevant to defending

against those claims.  See id.[8]

### III.    CONCLUSION

    WHEREFORE, the Court should deny the plaintiffs' Motion because it fails to comply

with Local Rule 37.1, is untimely, and because disclosure of the documents at issue is clearly not

necessary in the interests of justice.

---

[7] The attorney-client privilege "encourages disclosures by client to lawyer that better enable the client to conform his conduct to the requirements of the law and to present legitimate claims or defenses when litigation arises."  Id. at 684 (citing Upjohn Co. v. Unites States, 449 U.S. 383, 389-90 (1981)).

[8] If the Court questions the validity of the attorney-client and work product privileges asserted by Sovereign, then it should review the documents in question *in camera*, as requested by the plaintiffs, before ruling on the Motion.

SOVEREIGN BANK,
By its Attorneys,


 /s/ Matthew A. Kane
Donn A. Randall, BBO #631590
J. Patrick Kennedy, BBO #565778
Matthew A. Kane, BBO #666981
Bulkley, Richardson and Gelinas, LLP
98 North Washington St., Suite 500
P.O. Box 9750
Boston, MA 02114-0016
(617) 368-2500
mkane@bulkley.com

Dated:  February 2, 2010

## CERTIFICATE OF SERVICE

I, Matthew A. Kane, hereby certify that a true copy of the foregoing document was served upon all counsel of record via this Court's ECF system or, if not registered on this Court's ECF system, then via first class mail, postage prepaid, on February 2, 2010.


 /s/ Matthew A. Kane
Matthew A. Kane