UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHONE.COM, LLC; ESCOM, LLC, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 08-cv-11717-WGY |
| SOVEREIGN BANK, | ) |
| Defendant. | ) |

PLAINTIFFS' TRIAL BRIEF

The Plaintiffs, in accordance with the Court's December 3, 2010 Procedural Order, hereby submits the following Trial Brief, including at the end (i) proposed questions for the *voir dire* examination of the jury, (ii) requests for instructions to the jury with citation to supporting authority, and (iii) proposed special verdict form.

There are three counts to be tried to the jury - breach of the Uniform Commercial Code (as reflected in Mass. Gen. L. c. 106), breach of the covenant of good faith and fair dealing, and violation of Mass. Gen. L. c. 93A.

Introduction

The plaintiffs Phone.com, LLC ("Phone") and Escom, LLC ("Escom"), two internet startup companies, will show at trial that they lost in 2007 and 2008 a total of $460,461.62 due to the wrongful actions of their bank - the defendant Sovereign Bank ("Sovereign"). These losses occurred when Sovereign wrongfully allowed an unauthorized individual, namely Mr. Christopher Britt ("Britt"), to withdraw or otherwise take control over $155,612 in funds belonging to Phone and to another $304, 849.62 in funds belonging to Escom, even though Britt

had no signing authority on the plaintiffs' Sovereign accounts or any other legal authorization to take such actions.

In addition, the plaintiffs will show that Sovereign's actions towards the plaintiffs both at the time of the losses, and after discovery of the losses, have been wrongful, outrageous, unfair, and not consistent with good faith or fair dealing - including (but not limited to):

- Sovereign's failure to follow its clear and simple Confirmation Of Endorsement Form procedure for certifying the legitimacy of large banking transactions (such as the three banking transactions at issue in this matter) in order to prevent such thefts – which procedure if properly followed by Sovereign would have prevented all of the losses at issue at trial,

- the false notarization and witnessing of a Sovereign Confirmation Of Endorsement Form by a Sovereign branch manager (who later – on the advise of his criminal defense attorney - refused to answer questions at his deposition based on his rights against self-incrimination under the Fifth Amendment),

- the presence in Sovereign's books and records of a signature card for a Phone account that contains forged signatures even though the proper following of Sovereign bank polices on the creation of all signature cards should have prevented this from occurring,

- Sovereign's sudden freezing of all of the Sovereign bank accounts belonging to Phone and to its many affiliates less than 48 hours after the plaintiffs delivered a copy of their Chapter 93A letter to the same Sovereign employee who decided to freeze these accounts (Escom's accounts could not be frozen since Sovereign had allowed Britt to steal all of the money contained in them several months earlier), and

- Sovereign's sudden cancellation of a Sovereign credit line belonging to an affiliate of Phone and Escom a few weeks after the plaintiffs sent their Chapter 93A demand letter to Sovereign, even though this credit line had never been in default.

Factual Summary

The evidence at trial will show that from February 2007 through November 2007, Britt was a bookkeeping and finance employee of the Internet Real Estate Group LLC ("IREG") – which is a very small company (less than five employees) located in Boston and is one of the managers of the plaintiff Phone. Although IREG is not affiliated with the plaintiff Escom, some of its managers have or had some ownership interests in Escom.

In early December, 2007, Britt left the employ of IREG and began providing similar bookkeeping and finance services to IREG as an independent contractor through a company named Priviley, LLC ("Priviley") - which was and is owned entirely or primarily by Britt. IREG ended its business relationship with Priviley (and thus with Britt) on or about May 23, 2008 when IREG learned that Britt (and other Priviley staff) had been allowed by Sovereign to steal money from and/or otherwise defraud the Plaintiffs and several other entities related to IREG or its managers. IREG immediately reported these concerns to Sovereign on or about May 23, 2008 in order to make sure that Sovereign did not allow any further thefts by Britt.

There are three banking transactions at issue in this case. From largest to smallest they are as follows:

The $304, 849.62 Withdrawal From Escom in March 2008. As of the close of business on March 3, 2008, Escom had two bank accounts at Sovereign – a money market account with a balance of $301,446.27 and a checking account with a balance of $3,403.35. The only two approved signatories on these two Escom accounts were Mr. Andrew Miller ("Miller") and Mr.

Peter Hubshman ("Hubshman"). Britt was never an approved signatory on any of Escom's accounts at Sovereign.

On March 4, 2008, Britt went to a Sovereign branch in Boston, and Sovereign (through Sovereign Vice President and branch manager Donna Wolfe – "Wolfe") allowed Britt to close the Escom checking account and to transfer the entire balance of the Escom checking account to the Escom money market account. Soon thereafter, and also on March 4, 2008, Sovereign allowed Britt to close the Escom money market account and place the entire balance ($304,849.62) of the Escom money market account into a Sovereign "OFFICIAL CHECK" made out to Escom, LLC. Wolfe approved these transactions and signed this $304,849.62 OFFICIAL CHECK.

On or about March 5, 2008, Sovereign preliminarily accepted this $304,849.62 OFFICIAL CHECK made out to Escom, LLC for deposit into a Priviley bank account at Sovereign even though no one endorsed the back of this OFFICIAL CHECK and even though Priviley was not the payee on the check.

On March 5 or 6, 2008, Britt apparently was informed by a Sovereign official that Sovereign would not deposit the funds from the $304,849.62 OFFICIAL CHECK made out to Escom, LLC into a Priviley bank account at Sovereign unless and until Britt and an authorized signatory on the Escom accounts (i.e., Miller or Hubshman) each completed and signed a separate Sovereign's "Confirmation of Endorsement Form". This form, in accordance with Sovereign policy to prevent thefts like that done here by Britt, on its face absolutely requires the signature of the authorized signatory approving the transaction be made and witnessed in person in front of a notary public and a Sovereign official.

On March 6, 2008, Mr. Robby A. Thomas ("Thomas"), who was then a branch manager at Sovereign's 575 Boylston Street branch in Boston, signed as both a Sovereign CBO Team Member witness and a Massachusetts notary public on a Confirmation of Endorsement Forms that allowed the $304,849.62 OFFICIAL CHECK made out to Escom LLC to be deposited without endorsement into a Priviley bank account at Sovereign. Sovereign's Confirmation of Endorsement Form specifically provides that the payee signatory (i.e., Miller or Hubshman) "personally appeared" before the notary. In fact, it is undisputed that this did not happen in this case. Instead, on March 6, 2008, Thomas improperly and illegally notarized and witnessed the Confirmation of Endorsement Form allegedly signed and completed by Hubshman even though Hubshman did not appear before Thomas. In addition, any review of the original of this Confirmation of Endorsement Form shows that it was materially altered by white redaction ink (i.e., a product like "White Out") in order to change its terms prior to Thomas' improper and illegal notarization and witnessing. That Thomas notarized and witnessed such a clearly altered document without the signatory (i.e., Hubshman being present) is outrageous, unfair, not in good faith, and contrary to reasonable commercial standards of fair dealing. In fact, Thomas' action probably also are a violation of the criminal law. Without this document being notarized and witnessed by a Sovereign official, Sovereign would not have credited Priviley with Escom's money and Escom would not have been victimized.

As Thomas took the Fifth Amendment at his deposition in this matter, the Court should (i) inform the jury of this use of the Fifth Amendment by Thomas and instruct the jury as to the adverse inference it may accordingly make against Sovereign, and (ii) not admit at trial any memos, documents or testimony from Thomas explaining or describing his actions.

The Diversion of a $150,000 Check Made Out to Phone in September 2007. In late August 2007, an investor named Brian Scott mailed Phone a $150,000 check made out to "Phone.com LLC". When this check was presented to Sovereign by Britt (or by someone working with him or Priviley) on or about September 24, 2007, Sovereign allowed it to be deposited in full into a Sovereign bank account for Priviley, rather than into Phone's account at Sovereign. The deposit of this $150,000 into Priviley's account was made without the approval of Phone. In violation of its policy to avoid such diversions, no one was asked to complete a Confirmation of Endorsement Form for this transaction. Sovereign Branch Manager Wolfe has written and testified at her deposition that she clearly made a mistake in approving this transaction.

Sovereign has, and apparently now relies upon, an undated Phone "signature card" which appears to give Britt, in addition to Miller and Hubshman, signatory authority to a Phone.com account. However, the two signatures of Hubshman and the signature of Miller on this card are forged. A handwriting expert (Ms. Nancy McCann) on behalf of the plaintiffs will testify at trial (without expert rebuttal from Sovereign) that the two Hubshman signatures on this card are forged (Miller's signature differs so much from time to time that it impossible for the expert to reach an opinion as to the authenticity of Miller's signature on this card – although Miller denies that it is his signature on this card). In addition, even though Sovereign has a policy (to avoid forgeries) that all account signature cards must be signed in front of a bank official, testimony will show that Sovereign often violated this policy and must have violated it with respect to this card.

The Diversion of a $5,612.00 Phone Check Made Out To American Express in March 2008. On or about March 3, 2008, a $5,612.00 check from Phone's Sovereign checking account

made out to "American Express" (and listing an American Express account number) was presented by Britt (or by someone working with him or Priviley) to Sovereign for deposit into a Sovereign bank account for Priviley, rather than into an account for American Express or Phone. The deposit of this $5,612.00 into Priviley's account was made without the approval of American Express or Phone. Once again and in violation of its policy to prevent such diversions, no one was asked to complete a Confirmation of Endorsement Form for this transaction.

<u>Actions of Sovereign After Thefts Were Discovered</u>. In late May 2008 and early June 2008, representatives of Phone and Escom reported to Sovereign (through Wolfe and others) their losses described above.

A little over a month later, on Wednesday July 9, 2008 at approximately 5:12 pm, the plaintiffs Phone, Escom and a related entity (Consultants.com LLC) sent a demand letter to Sovereign asserting claims under Mass. Gen. L. c. 93A and demanding payment by Sovereign of a total of $500,961.62 (including the three transactions noted above). A copy of this letter was sent electronically at that time to Sovereign's in-house attorney Denise A. Gaudet, Esq. ("Gaudet"). Gaudet received and reviewed this email no later than 5:36 pm on that same day. Less than 48 hours later, during the morning of Friday July 11, 2008, Gaudet without any notice or warning sent a letter to the plaintiffs' counsel telling him that Sovereign had frozen the bank accounts of Phone, Consultant, and seventeen other LLC entities with which some of the principals of these plaintiffs are affiliated. Sovereign could not freeze any Escom accounts as Sovereign had already wrongfully allowed Britt to close these accounts and take all the money in them. The July 11, 2008 letter was sent without any good cause and in bad faith, to retaliate against these plaintiffs for asserting their legal rights under Chapter 93A against Sovereign less than two days earlier. This July 11, 2008 letter also stated that these entities must give Sovereign

detailed confidential corporate information and documents in order to get their Sovereign accounts unfrozen, even though this type of documents and information is not requested of other account holders . During the afternoon of July 11, 2008, plaintiffs' counsel repeatedly requested of Gaudet by phone that Sovereign unfreeze these accounts immediately. Gaudet and Sovereign refused these requests.

The managers of the entities that had their Sovereign accounts frozen under the terms of the July 11, 2008 letter were forced to spend many hours of time and some money in the weeks after that date collecting the documents and information demanded. This was highly harmful to their ability to conduct business as normal. In addition, Sovereign's freezing of these accounts sent the affected companies' investors and business partners the inaccurate and highly defamatory signal that these companies had financial problems or improprieties.

On or about August 21, 2008, Sovereign closed IREG's $50,000 Line of Credit without any notice or proper reason. Moreover, Sovereign did not send any letter notifying IREG of this closure until September 16, 2008 - after IREG attempted to use this Line of Credit for a business purpose. The closure of this Line of Credit by Sovereign was done without any good cause and in bad faith, apparently to retaliate against IREG for having its affiliated companies Phone, Escom and Consultants assert their legal rights under Chapter 93A against Sovereign a few weeks earlier. Although Sovereign has now claimed that this closure was due to credit concerns, this claim is pretextual since at no time did Sovereign contact IREG to request additional security or guarantors for this line of credit.

<u>Comparative Negligence</u>. Sovereign's defense of the UCC count appears to be primarily based on the comparative negligence provision of Mass. Gen. L. c. 106, § 4-406 (c, d and e) and related provisions. However, this defense only applies if the jury first specifically finds that the

bank acted in "good faith" – which is defined for this purpose under the revised UCC as requiring "honesty in fact and the observance of reasonable commercial standards of fair dealing." See Mass. Gen. L. c. 106, § 3-103(7) (emphasis added).

Given the facts of this case, plaintiffs feel that the jury probably will, and certainly should, find that Sovereign failed to observe reasonable commercial standards of fair dealing, and thus did not act in good faith. Thus, Sovereign's attempts to malign and vilify the actions of the plaintiffs, who are the innocent victims in this matter, should be legally irrelevant as well as being highly prejudicial. Moreover, comparative negligence plays no role whatsoever in the other counts before the jury.

In any case, the evidence will show that the plaintiffs are small entities and that IREG did supervise Britt to the best of its abilities under the circumstances. The plaintiffs absolutely did not make Britt a signatory on any of their Sovereign accounts and relied upon Sovereign to follow its own procedures to safeguard the plaintiffs' money.

Voir Dire

The Plaintiffs hereby respectfully request that the Court ask potential jurors the following four special questions on *voir dire*:

1. Have you or any member of your immediate family ever worked for the Sovereign Bank?
2. Have you or any member of your immediate family ever had a bank account, loan or credit card with the Sovereign Bank?
3. Do you know any of the following people or entities: Mr. Christopher Britt, Ms. Sera Vermette, Ms. Kristina Harms, Attorney John Cushing, or Priviley LLC? [This is a list of Mr. Britt's associates, attorney and corporation]

4.   To your knowledge do you own shares of stock, debentures or the like in the Sovereign Bank or in its Spanish parent company Banco Santander?

Requests for Instructions to the Jury.

The plaintiffs' requested instructions to the jury, on claims and issues that are not before the Court for trial by jury on a regular basis, are attached hereto as Exhibit A. The plaintiffs respectfully request the right to submit corrected instructions in case any errors or omissions are discovered.

Requested Special Verdict Form

The plaintiffs' requested special verdict form is attached hereto as Exhibit B. The plaintiffs respectfully request the right to submit a corrected form in case any errors or omissions are discovered.

Respectfully submitted,

PHONE.COM, LLC; and ESCOM, LLC;

By their attorneys,

/s/ Geoffrey R. Bok
Geoffrey R. Bok (BBO #550851)
John M. Simon (BBO #645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated: February 26, 2010

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically today to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Geoffrey R. Bok